IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAMES A. BYRUM                                             PLAINTIFF

v.                      CIVIL NO. 2:17-CV-2042

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                             DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, James A. Byrum, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) under the provision of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current application for SSI on November 16, 2012, alleging an inability to work since November 1, 2011, due to arthritis, wrist problems, back problems, shoulder problems, and the fact that he could not read or write more than his own name. (Tr. 57, 70). An administrative hearing was held on November 13, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 25-55). John Massey, a Vocational Expert (VE), also testified. (Tr. 48-54).

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

In a written opinion dated March 20, 2014, the Administrative Law Judge (ALJ) found that Plaintiff was not disabled, as he was able to perform other work given his age, education, work experience, and residual functional capacity (RFC). (Tr. 20). Plaintiff appealed the decision, and on February 11, 2015, the Appeals Council denied review. (Tr. 1-3). Plaintiff then filed a complaint in Federal District Court on April 7, 2015. On November 17, 2015, the District Court remanded the case to the Commissioner for further review. The Appeals Counsel vacated the previous ALJ decision on March 15, 2016. (Tr. 337). The Appeals Council noted that on April 20, 2015, Plaintiff filed a subsequent application for SSI. (Tr. 339) The Appeals Council further noted that Plaintiff received a favorable determination and was found to be disabled as of April 20, 2015. (Tr. 339). A supplemental hearing was held on September 1, 2016.

On December 14, 2016, the ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disorder, degenerative disc disease, disorder of the wrists, a learning disorder, and borderline intellectual functioning. (Tr. 274). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 274-276). The ALJ found Plaintiff retained the RFC to perform light work with the following exceptions:

> [c]laimant can frequently finger, handle and reach bilaterally and frequently operate foot controls. He can occasionally climb ropes and ladders. He can frequently climb stairs and ramps, balance, crawl, kneel, stoop, and crouch but should avoid moderate exposure to pulmonary irritants like dusts, odors and gases. He is limited to simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed and can respond to supervision that is simple, direct, and concrete. He can read and write only very simple words.

(Tr. 276-281). The ALJ found that Plaintiff had no past relevant work; however, he determined that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 281-282). Ultimately, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from November 16, 2012, the date his application was filed, through April 20, 2015. (Tr. 282). Subsequently, Plaintiff filed a Petition for Judicial Review of the matter on March 15, 2017. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.    Evidence Submitted:**

Plaintiff was born in 1965 and completed half of the ninth grade. (Tr. 293). A review of the medical evidence reflects that on January 14, 2013, Plaintiff underwent a Mental Diagnostic Evaluation and Psychometric Evaluation by Dr. Steve A. Shry, Ph.D. (Tr. 247-249). At the time of the evaluation, Plaintiff reported that one of his grade school teachers told him that he was dyslexic; that he had a long history of illiteracy; and that he had a thirteen-year history of chronic pain and physical problems. (Tr. 247). Dr. Shry observed that Plaintiff had no history of inpatient or outpatient mental health treatment; that he was not on psychiatric medication at the time of the evaluation; that he cited financial difficulties as an obstacle to treatment; that he had no spouse or children; that he had not held a job since 2000 due to back and wrist pain; and that he had "a couple DWI's" in previous years. (Tr. 247-248). Dr. Shry described Plaintiff as pleasant, cooperative, friendly, with normal mood and affect. (Tr. 247). Dr. Shry observed Plaintiff as having adequate fluency and simple sentence structure, with

logical and relevant responses, and with associations that were well connected and goal oriented. (Tr. 248). On the Wechsler Adult Intelligent Scale Test, Plaintiff scored a 76 on the verbal portion, an 84 on the performance portion, and a full scale score of 78. (Tr. 248). Dr. Shry opined that Plaintiff seemed to meet the criteria for a learning disability and borderline intellectual functioning with a GAF of 50. (Tr. 247-248). Dr. Shry opined that Plaintiff was capable of handling personal hygiene, shopping, driving, managing funds, completing household chores, and participating in social groups. He further opined that Plaintiff had no impairment in his ability to communicate and interact in a socially adequate manner or to communicate in an intelligent and effective manner. (Tr. 249). Plaintiff appeared to have no impairment in his ability to carry out simple tasks; however, he had mild to moderate difficulty on more complex tasks. (Tr. 249). Dr. Shry opined that Plaintiff had no impairment in his ability to sustain concentration and persistence when completing tasks; he was capable of performing simple tasks within an adequate time frame, with mild to moderate impairment when completing complex tasks; and he was capable of performing basic calculations. (Tr. 249).

On January 16, 2013, a General Physical Examination was performed by Dr. Michael Westbrook. Dr. Westbrook determined that while Plaintiff complained of pain in his low back, wrists, hands, and neck, he had normal grip, normal ROM in his extremities, could squat and arise from a squatting position, could stand and walk without assistive devices, and had normal straight leg raise tests. (Tr. 252-256). Dr. Westbrook diagnosed Plaintiff with back pain and an old wrist injury, and opined that he had only mild limitations. (Tr. 252-256). He also noted that Plaintiff smoked one pack of cigarettes per day. (Tr. 252-256).

On January 18, 2013, non-examining physician, Dr. Bill Payne, completed a Physical RFC Assessment, where he determined that Plaintiff was capable of medium work. On that same day, non-examining physician, Dr. Christal Janssen, Ph.D., conducted a Psychiatric Review Technique. In that assessment, Dr. Janssen found that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (Tr. 62). Dr. Janssen also performed a Mental RFC Assessment, where she determined that Plaintiff was able to perform work where interpersonal contact was incidental to work performed; complexity of tasks was learned and performed by rote, few variables, little judgment; and supervision required was simple, direct, and concrete. (Tr. 67).

In February and April of 2013, Nurse Laura Henson's progress notes indicated that Plaintiff was a daily smoker with complaints of trouble breathing, a cough, and pain between his shoulders. (Tr. 261). Nurse Henson assessed Plaintiff with reactive airway dysfunction, shortness of breath, upper respiratory infection, arthropathy of multiple sites, and lumbago. (Tr. 262). Plaintiff was prescribed medication and was encouraged to apply for Medicaid so that he could obtain a pulmonary consultation. (Tr. 262).

On April 10, 2013, non-examining medical consultant, Dr. Valerie Malak, completed a Physical RFC Assessment where she found that Plaintiff was capable of medium work. (Tr. 79). On April 11, 2013, non-examining medical consultant, Dr. Dan Donahue, Ph.D. conducted a Psychiatric Review Technique, finding that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (Tr. 76). Dr. Donahue also performed a Mental RFC Assessment, where he

5

determined that Plaintiff was able to perform work where interpersonal contact was incidental to work performed; complexity of tasks was learned and performed by rote, few variables, little judgment; and supervision required was simple, direct, and concrete. (Tr. 81).

On November 18, 2013, Plaintiff underwent literacy testing through the Literacy Council of Western Arkansas, Inc. During testing, Plaintiff reported that he was in special education while in school and that he had a ninth grade education. (Tr. 268). Plaintiff's scores indicated that he was functioning below the first grade level, and thus, fell within the illiterate category. (Tr. 268).

Plaintiff underwent pulmonary function testing on June 6, 2015, which indicated that he had very severe obstruction; that he had a low vital capacity; and that he had a lung age of 80 years. (Tr. 476-481).

On September 12, 2016, Dr. Philip S. Bentlif completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 497-502). In that assessment, Dr. Bentlif found that Plaintiff could: frequently lift/carry 11-20 pounds; occasionally lift/carry 21-50 pounds; sit/stand/walk two hours at a time without interruption; sit/stand/walk six hours in an eight hour work day; frequent overhead reaching; frequent operation of foot controls; frequent climbing of stairs and ramps, balancing, stooping, kneeling, crouching, crawling; occasional climbing of ladders and scaffolds. (Tr. 497-500). Dr. Bentlif also found that Plaintiff could shop, travel without a companion, ambulate without assistance, walk a block at a reasonable pace, use public transportation, climb steps at a reasonable pace with use of a single hand rail, prepare simple meals, feed himself, and had no problems with personal care. (Tr. 502). Lastly, Dr. Bentlif noted that Plaintiff "must quit smoking." (Tr. 501).

Dr. Bentlif also completed a Medical Interrogatory Physical Impairment form for the time period of November 1, 2011, through April 20, 2015. (Tr. 494-495). Dr. Bentlif opined that Plaintiff's impairments did not meet or equal any impairment described in the Listing of Impairments, meanwhile, noting a lack of information. (Tr. 495). In support of his opinion, Dr. Bentlif noted Plaintiff's reactive airway disease, history of lumbago, osteoarthritis in multiple joints, and tobacco abuse. (Tr. 495).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. See Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. See Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. See

7

Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**IV.     Discussion:**

Plaintiff makes the following arguments on appeal: 1) the ALJ erred in finding that Plaintiff's impairments did not meet or were equal to one of the listed impairments in Appendix 1; 2) the ALJ erred in his credibility determination; and 3) the ALJ erred in his RFC determination; and 5) the ALJ erred in his hypothetical question to the Vocational Expert.

### A. Evaluation of the Listed Impairments:

Plaintiff asserts that the ALJ erred by failing to determine that Plaintiff's impairment medically equals Listing 3.02 Chronic Obstructive Pulmonary Disease (COPD).

The burden of proof is on the Plaintiff to establish that his impairment meets or equals a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant ... must present medical findings equal in severity to all the criteria for the one most similar listed impairment"). In this case, the ALJ found the medical evidence was not indicative of the specific clinical signs and diagnostic findings pertaining to COPD required to meet or equal the requirements set forth in Listing 3.02.

The Court finds that based upon the record as a whole, there was sufficient evidence for the ALJ to make an informed decision, and Plaintiff's argument is without merit. Accordingly, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's impairment of COPD did not medically equal a Listing.

### B. Subjective Complaints and Symptom Evaluation:

The Plaintiff argues that the ALJ erred in his credibility determination by failing to follow the standard set forth in Polaski. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his

medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The record reflects that Plaintiff completed a Function Report on April 3, 2013, wherein he reported that, while he had pain in his ankle, wrist and back, as well as shortness of breath, he was able to manage his personal care; needed no reminders to care for himself or to take medication; could prepare simple meals; could travel by walking or riding in a car; could go out alone; could shop in stores for food; and needed no reminders to go places or anyone to accompany him. (Tr. 222-225). Moreover, Plaintiff reported that he needed a cane and back brace; however, he also noted that neither had been prescribed by a doctor. Moreover, while he reported that he took medication for his pain, Plaintiff did not list any prescription medications on the report. (Tr. 228-229). Plaintiff also reported that he got along well with others; could finish what he started; could follow written, simply worded, instructions; and could follow spoken instructions well. (Tr. 227). At the hearing before the ALJ on November 13, 2013, Plaintiff testified that he stopped working in 1998 or 1999 due to back pain. He further testified that he had not returned to work because he was the care-taker for his sister, who was ill with cancer, and a care-taker for a friend with Berger's Disease. (Tr. 32-33). At a subsequent hearing before the ALJ on September 1, 2016, Plaintiff testified that he suffered from back pain,

10

COPD, and arthritic pain in his hands and feet. (Tr. 294). Plaintiff testified that he was illiterate, and further explained that he was in special education when he was in school and that his reading ability further diminished over time. (Tr. 304-305). Plaintiff testified that around 2013 he was doing small jobs for cash, including chores for his aunt. (Tr. 302). As for Plaintiff's smoking habits, he testified that he had cut back to three to four cigarettes per day. (Tr. 304-305).

The Court notes the minimal number of medical records in this case. At the first hearing before the ALJ in 2013, Plaintiff testified that he had not seen many doctors because he could not afford medical care. (Tr. 34). While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The Court would also point out that despite Plaintiff's allegations that he could not afford medical treatment, he managed to come up with the funds to purchase cigarettes to support his daily cigarette habit.

Moreover, at the 2016 hearing before the ALJ, Plaintiff explained his lack of medical records by stating that he was "claustrophobic" and disliked going to the doctor, even after 2015, when he began receiving Medicaid benefits. (Tr. 298-299). The record containing minimal medical treatment is inconsistent with Plaintiff's subjective complaints. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (a claimant's subjective allegations may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications); Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure

11

to seek aggressive treatment is not suggestive of disabling back pain."). The record also failed to show that Plaintiff was taking prescribed medication for his pain. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain). While Nurse Laura Henson's notes from a visit in February of 2013 showed that Plaintiff was prescribed medication for his breathing problems, Plaintiff testified on September 1, 2016, that he was using an inhaler from a friend. (Tr. 262, 299). Moreover, three of four function and pain reports from 2012 and 2013 did not list any current medications for Plaintiff. (Tr. 186, 196, 229). Infrequent use of prescription drugs supports discrediting Plaintiff's complaints. See Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999).

With respect to Plaintiff's allegations of COPD, the record contained several accounts of Plaintiff's smoking habit. See Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (noting that "continued smoking amounts to a failure to follow a prescribed course of remedial treatment" when smoking has a direct impact on the alleged disability).

Although it is clear that Plaintiff suffers some degree of limitation, he has not established that he is unable to engage in any gainful activity. Neither the medical evidence nor the reports concerning his daily activities support Plaintiff's contention of total disability. The Court finds that the ALJ adequately evaluated the factors set forth in Polaski, and conclude there is substantial evidence supporting his determination that Plaintiff's complaints were not fully credible.

**C.    ALJ's RFC Determination:**

Plaintiff alleges that the ALJ's RFC determination is inconsistent with the evidence pertaining to Plaintiff's COPD. RFC is the most a person can do despite that person's

12

limitations. See 20 C.F.R. § 416.945(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. See 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. See Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 416.927(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007), citing Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treating relationship; (3) supportability of the

opinion; (4) consistency; (5) specialization; and, (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 416.927(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." Id. at § 416.927(c)(2) (emphasis added).

In finding Plaintiff able to perform light work with certain limitations, including avoidance of moderate exposure to pulmonary irritants like dusts, odors, and gases, the ALJ considered Plaintiff's subjective complaints and the medical records of his treating and examining physicians. The ALJ also considered the evaluations of the examining and non-examining medical providers.

Specifically, the ALJ considered the General Physical Examination performed by Dr. Michael R. Westbrook in January of 2013. Dr. Westbrook noted that despite complaints of shortness of breath and pain in his low back, hands, wrists, and neck, Plaintiff was not taking any medication. (Tr. 252-256). Dr. Westbrook's examination revealed that Plaintiff had normal grip in both hands, normal ROM in his extremities, no muscle spam, weakness, atrophy or sensory abnormalities, normal reflexes, could squat and rise from a squatting position, could stand and walk without assistive devices, and had normal straight leg raise tests. (Tr. 252-256). Dr. Westbrook opined that Plaintiff had only mild limitation in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak, and diagnosed him with back pain and bilateral wrist injuries. (Tr. 252-256). Dr. Westbrook also noted Plaintiff's one pack per day smoking habit. (Tr. 252).

Plaintiff's only visit to a medical professional during the relevant time period was to Nurse Laura Henson on February 5, 2013. At that visit, Plaintiff complained of trouble breathing, coughing, and pain between his shoulders. (Tr. 261). Nurse Henson assessed Plaintiff with reactive airway dysfunction, shortness of breath, acute upper respiratory infection, arthropathy of multiple sites, and lumbago. (Tr. 262). Plaintiff was prescribed Cipro, Prednisone, Abuterol, and Symbicort. (Tr. 262). Nurse Henson noted that Plaintiff had been a daily smoker since he was ten years old, and she encouraged him to apply for Medicaid. (Tr. 262). Based on a review of the record, Plaintiff did not seek further treatment during the relevant time period.

The ALJ also discussed the opinion of non-examining state agency physician, Dr. Bill Payne, and his Physical RFC Assessment. (Tr. 63-65). Dr. Payne opined that Plaintiff was able to perform medium work. (Tr. 63-65). The ALJ also gave some weight to the April 10, 2013, Physical RFC Assessment completed by Dr. Valeria Malak, also a non-examining state agency physician, where she affirmed Dr. Payne's findings. The ALJ ultimately determined that the Plaintiff was more limited than Drs. Payne and Malak determined him to be.

Lastly, the ALJ considered Plaintiff's literacy testing, conducted on November 18, 2013. (Tr. 268). Testing results showed that Plaintiff was reading at less than a first grade level, which placed him in the illiterate category. (Tr. 268). Plaintiff testified that he had completed a portion of the ninth grade, with the assistance of special education services, and could read restroom signs as well as traffic signs. (Tr. 301). Moreover. Dr. Steve A. Shry, Ph.D. reported that based on his Mental Diagnostic Evaluation of Plaintiff, he found Plaintiff to have adequate fluency, simple sentence structure, and logical and relevant responses. (Tr.

248). Dr. Shry also found Plaintiff's associations to be well connected and goal oriented, and found him to have no difficulty with his thought content. (Tr. 248).

The ALJ also considered and gave great weight to the Psychiatric Review Technique conducted on January 18, 2013, by Dr. Cristal Janssen, Ph.D, and a second Psychiatric Review Technique performed on April 11, 2013, by Dr. Dan Donahue, Ph.D, both non-examining state agency physicians. (Tr. 62-67, 76-81). Both Dr. Janssen and Dr. Donahue determined that Plaintiff retained the ability to perform unskilled work. (Tr. 67, 81). In addition, the ALJ gave great weight to the opinion of Dr. Shry, who diagnosed Plaintiff with a learning disorder and borderline intellectual function. (Tr. 248-249). Dr. Shry noted that Plaintiff denied difficulty attending to daily adaptive functioning tasks and could handle his own personal care, could shop, could drive, could manage funds, and participate in social groups. (Tr. 249). Dr. Shry opined that Plaintiff had no impairment in his ability to communicate and interact in a social adequate manner, no impairment in his ability to communicate in an intelligible and effective manner, could carry out simple tasks, had the ability to sustain concentration and persistence when completing tasks, had the ability to perform simple tasks within an adequate time frame, and was capable of performing basic calculations. (Tr. 249).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D.     **Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record

as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a plastic molding machine tender, a hotel housekeeper, or a power screwdriver operator. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.  Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of December, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE